﻿Citation Nr: AXXXXXXXX
Decision Date: 01/08/19 Archive Date: 01/07/19

DOCKET NO. 180906-66
DATE: January 8, 2019

ORDER

A compensable rating for hemorrhoids is denied.

A compensable rating for hypertension is denied.

Readjudication of the claim for service connection for glaucoma is warranted.

Readjudication of the claim for service connection for a psychiatric disorder to include posttraumatic stress disorder (PTSD) and anxiety is warranted.

Service connection for glaucoma is denied.

Service connection for a gastrointestinal (GI) disorder is granted.

REMANDED

Service connection for a psychiatric disorder, to include PTSD and anxiety.

FINDINGS OF FACT

1. The Veteran served on active duty from November 1985 to November 2005.

2. Hemorrhoids have been manifested by subjective complaints of pain and bleeding; objective findings include mild to moderate internal and external hemorrhoids with intermittent bleeding. Anemia and fissures have not been shown.

3. Hypertension requires continuous medication for control; diastolic pressure is not predominantly 100 or more and systolic pressure is not predominantly 160 or more. 

4. New evidence was received after the January 2014 denial that is relevant to the issue of entitlement to service connection for glaucoma.

5. New evidence was received after the January 2013 denial that is relevant to the issue of entitlement to service connection for a psychiatric disorder to include PTSD and anxiety.

6. Glaucoma was not shown in service and is not etiologically or casually related to service.

7. A GI disorder, currently diagnosed as GERD, gastritis and esophagitis, is etiologically related to service.

CONCLUSIONS OF LAW

1. The criteria for a compensable rating for hemorrhoids have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.114, Diagnostic Code (DC) 7336 (2018).

2. The criteria for a compensable rating for hypertension have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.104, DC 7101 (2018).

3. The criteria for readjudicating the claim for service connection for glaucoma have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).

4. The criteria for readjudicating the claim for service connection for a psychiatric disorder, to include PTSD and anxiety, have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).

5. Glaucoma was not incurred during service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.304 (2018).

6. A GI disorder was incurred during service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form. Accordingly, the June 2018 RAMP rating decision (notice of which was sent on July 9, 2018) considered the evidence of record prior to the issuance of the RAMP rating decision. He timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The new and material evidence issues regarding glaucoma and a psychiatric disorder to include PTSD and anxiety have been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. In the June 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for GERD. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.

Increased Rating Claims

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. 

Hemorrhoids

Hemorrhoids have been rated under DC 7336, which provides ratings for internal or external hemorrhoids. Mild or moderate hemorrhoids are rated as noncompensable (0 percent disabling). Large or thrombotic hemorrhoids, irreducible, with excessive redundant tissue, evidencing frequent recurrences, are rated 10 percent disabling. Hemorrhoids with persistent bleeding and with secondary anemia, or with fissures, are rated at 20 percent disabling. 

The Veteran claims that a compensable rating is warranted for his service-connected hemorrhoids. In a February 2016 written statement, the Veteran indicated that he wants a 10 percent rating for his hemorrhoids because of the bleeding. In the alternative, he claims a 10 percent rating is warranted for bleeding and loss of sphincter control under DC 7332.

In a January 2014 VA examination, it was noted that the Veteran had mild to moderate internal hemorrhoids with intermittent bright red rectal bleeding, primarily with wiping. He did not require continuous medication for the treatment of his symptoms. Rectal examination was normal; there were no external hemorrhoids, anal fissures or other abnormalities. It was specifically noted that there were no other specific findings or results. 

The examiner opined that although the Veteran’s symptoms are chronic and intermittent; they are largely under adequate self-management with diet and Tucks. There was no sign that the hemorrhoids were large or thrombotic, irreducible, with excessive redundant tissue, evidencing frequent recurrences. 

An October 2014 VA examination report reflects a diagnosis of hemorrhoids. It was specifically noted that there was not a diagnosis of impaired sphincter control. The Veteran reported current symptoms including episodic flares with constipation and soreness with no bleeding. He took continuous medication for the treatment of his symptoms (Tucks and over-the-counter medications and suppositories). 

The examiner noted mild to moderate internal and external hemorrhoids with small external hemorrhoids tags. The examiner specifically noted that the Veteran did not have (nor did he complain of) any impaired sphincter control whatsoever or other symptoms such as rectal strictures, leakage, fistula, or anemia. Further, there was no sign of large or thrombotic, irreducible, with excessive redundant tissue, evidencing frequent recurrences.

A January 2015 private treatment record notes that there was no blood in stool, rectal pain, or anal bleeding. The only other treatment evidence of record relevant to the appeal period is VA treatment records from 2015 to 2017 noting ongoing diagnosis and over-the-counter creams for his hemorrhoids. 

In light of the above, a compensable rating for hemorrhoids is not warranted. As indicated, the Veteran’s hemorrhoids are not large or thrombotic, irreducible, with excessive redundant tissue. Instead, the hemorrhoids have been characterized as mild to moderate. Importantly, it has been specifically found that they are not thrombotic hemorrhoids, irreducible, with excessive redundant tissue. Thus, the criteria for a compensable rating are not met. 

With regard to his claim that a higher rating is warranted based on loss of sphincter control, the medical evidence does not reflect that the Veteran has ever complained of loss of sphincter control and rectal examinations have never resulted in any such findings. As such, the medical evidence does not support a higher rating. 

Hypertension

Hypertension is rated as noncompensable pursuant to 38 C.F.R. § 4.104, DC 7101. Under DC 7101, a 10 percent evaluation is warranted where diastolic blood pressure is predominantly 100 or more, or systolic blood pressure is predominantly 160 or more, or when an individual with a history of diastolic blood pressure predominantly 100 or more requires continuous medication for control. 

A September 2013 VA treatment record notes a blood pressure reading of 144/90. An October 2014 VA examination reflects blood pressure readings of 140/92, 132/90, and 134/90. The examiner noted that the Veteran required continuous medication for control of his hypertension. It was also specifically noted that he did not have a history of diastolic blood pressure elevation to predominantly 100 or more.

A June 2015 private Disability Benefits Questionnaire (DBQ) notes that the Veteran took continuous medication for hypertension. It was specifically noted that he did not have a history of diastolic blood pressure elevation to predominantly 100 or more. Blood pressure readings from November 2014, January 2015 and June 2015 were 122/76, 120/80, and 126/78, respectively. 

Private treatment records noted a blood pressure reading of 138/85 and 120/88 in October 2015 and 120/80 in December 2015. A July 2017 VA treatment record noted a blood pressure reading of 126/76. A February 2018 VA treatment record noted a blood pressure reading of 131/82.

After review, the medical evidence does not support a compensable rating. In this regard, the Veteran’s diastolic pressure is not and has not historically been predominantly 100 or more. Notably, both the June 2015 private and October 2015 examination report specifically noted that it had not been predominantly 100 or more. Additionally, the evidence of record demonstrates that the systolic blood pressure was never predominantly 160 or more.

The Veteran claims that his diastolic pressure would be over 100 without medication. However, as DC 7101 contemplates the ameliorative effects of medication, the blood pressure readings when the Veteran was taking medication are the best evidence of record. See McCarroll v. McDonald, 28 Vet. App. 267 (2016) (because the hypertension DC lists “continuous medication for control” as a criterion in the 10% evaluation, the DC, when read as a whole, contemplates the effects of medication in assigning a disability evaluation). Therefore, a compensable rating for hypertension is denied.

The Board has also considered the Veteran’s lay statements that his hemorrhoids and hypertension disabilities are worse. While he is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses, Layno v. Brown, 6 Vet. App. 465, 470 (1994), he is not competent to identify a specific level of disability of these disorders according to the appropriate diagnostic codes.

Such competent evidence concerning the nature and extent of the Veteran’s hypertension and hemorrhoids has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and other clinical evidence) directly address the criteria under which these disabilities are evaluated. 

Moreover, as the examiners have the requisite medical expertise to render medical opinions regarding the degree of impairment caused by the disabilities and had sufficient facts and data on which to base the conclusions, the Board affords the medical opinions great probative value. 

As such, these records are more probative than the Veteran’s subjective evidence of complaints of increased symptomatology. In sum, after a careful review of the evidence of record, the benefit of the doubt rule is not applicable and the appeals are denied.

New and Relevant Evidence

VA will readjudicate a claim if new and relevant evidenced is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105.

Glaucoma

The Veteran contends that he submitted evidence with his legacy system petition to reopen a claim for service connection for glaucoma that is new and relevant and warrants readjudication of the issue.

The questions in this case are whether the Veteran submitted evidence after the prior final denial of his claim for service connection for glaucoma in the legacy system, and if so, whether that evidence is new and relevant to his claim.

The Board finds the Veteran submitted new evidence after the prior final rating decision in the legacy system that is relevant to his claim. He submitted a November 2015 private treatment record in February 2016, after the January 2014 prior final legacy rating decision, which indicated that he now has a diagnosis of glaucoma. The evidence of a current diagnosis was not already of record and proves the first element of the claim for service connection for glaucoma. As such, it is relevant and readjudication of the claim is warranted.

Acquired Psychiatric Disorder to include PTSD and Anxiety

Initially, the Board notes that there was a prior, final denial of service connection for PTSD in January 2013; however, at the time of the prior denial there was medical evidence of a diagnosis of anxiety. Thus, the Board has recharacterized the claim as encompassing all claimed psychiatric disorders. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (holding that the scope of a Veteran’s claim for service connection for PTSD includes any mental disability that may reasonably be encompassed by the Veteran’s description of the claim, reported symptoms, and the other information of record). 

The Veteran contends that he submitted evidence with his legacy system petition to reopen a claim for service connection for a psychiatric disorder that is new and relevant and warrants readjudication of the issue.

The questions in this case are whether the Veteran submitted evidence after the prior final denial of his claim for service connection for a psychiatric disorder in the legacy system, and if so, whether that evidence is new and relevant to his claim.

The Board finds that the Veteran submitted new evidence after the prior final rating decision in the legacy system that is relevant to his claim. In February 2016, after the January 2013 prior final legacy rating decision, he submitted a written statement which describes his alleged stressors during service. He also submitted a written statement in July 2014 which indicated that since returning from Desert Storm he has experienced anxiety and frustration for no apparent reason. 

Further, in a February 2016 written statement he indicated that no longer felt that he only experienced normal anxiety, as he previously stated. The specific stressor evidence and statements indicating ongoing anxiety/more than normal anxiety since service were not already of record and may prove or disprove elements of the claim for service connection for a psychiatric disorder. As such, it is relevant and readjudication of the claim is warranted.

Service Connection Claims

Service connection may be granted on a direct basis as a result of disease or injury incurred in service based on nexus using a three-element test: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated by service. See 38 C.F.R. §§ 3.303(a), (d); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009). 

Service connection may be granted on a presumptive basis for diseases listed in § 3.309 under the following circumstances: (1) where a chronic disease or injury is shown in service and subsequent manifestations of the same disease or injury are shown at a later date unless clearly attributable to an intercurrent cause; or (2) where there is continuity of symptomatology since service; or (3) by showing that the disorder manifested itself to a degree of 10 percent or more within one year from the date of separation from service. See 38 C.F.R. § 3.307.

Glaucoma

The Veteran claims that service connection is warranted for glaucoma. In a July 2014 written statement, he indicated that symptoms of glaucoma (hazy and blurred vision, haloes around lights, and sometimes pressure around the eyes) were present during service. 

After review, service connection for glaucoma is not warranted. In this regard, the service treatment records (STRs) are silent for complaints or diagnoses of glaucoma. All eye examinations were normal, finding only myopia and astigmatism. A February 2004 in-service eye examination noted normal ocular health. He did not report any eye symptoms. 

An April 2005 eye examination noted his complaints of blurred near and distance vision and floaters/spots. The examiner noted that ocular health was within normal limits and glaucoma was not found. There were no other eye complaints or findings. The separation examination noted normal eye examination. Such findings weigh against a finding of glaucoma during service.

A 2012 private examination noted a diagnosis of borderline glaucoma and the first recorded diagnosis of glaucoma found in the post-service medical evidence is dated in October 2015, nearly a decade after discharge. Finally, there is no medical evidence establishing a relationship between the Veteran’s glaucoma and service. Therefore, the medical evidence does not support the claim.

The Board has considered the Veteran’s lay statements asserting a relationship between glaucoma and service, including in-service symptoms of blurred vision, etc. While he is competent to describe his observations, he is not competent to offer an opinion linking his glaucoma to his active service, as those opinions require medical expertise and are outside the realm of common knowledge of a layperson. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d. 1372 (Fed. Cir. 2007). Therefore, he is not competent to diagnose glaucoma or provide an etiology opinion in this case. Notably, the examinations during service reflect normal eye examinations despite his complaints, and no glaucoma was found in service or until many years thereafter. 

The Veteran contends that a VA examination should be undertaken. While there is evidence of a current disorder, the evidence does not establish that an event, injury, or disease related to glaucoma occurred in service. Further, except for his lay statements, the evidence does not offer an indication that the disability may be associated with service. Therefore, an examination is not warranted.

In sum, the preponderance of the evidence is against the claim. As such, entitlement to service connection for glaucoma is not warranted, and the appeal is denied.

Gastrointestinal Disorder

The Veteran claims that service connection is warranted for a GI disorder because it began during service. Specifically, in a June 2014 written statement he indicated that he went to sick call numerous times during service with stomach problems and an ulcer was diagnosed in 1996.

The STRs reflect that in November 1996, the Veteran was seen for a follow-up of multiple gastric erosion consistent with gastritis. The assessment was peptic ulcer disease/gastritis. Medication was prescribed. A December 1996 STR notes that he was diagnosed with an ulcer in September 1996. It was noted that he was on medication and was feeling better. The diagnosis was resolving gastritis. September 2004 and February 2005 STRs note that there were no GI symptoms. 

The retirement examination Report of Medical History reflects that the Veteran endorsed stomach or intestinal problems; he denied frequent indigestion or heartburn. He stated that he was diagnosed with an ulcer in 1996 and prescribed medication.

The post service medical evidence includes a June 2015 letter from a private physician (Dr. D), which indicated that the Veteran had been under Dr. D’s care for GERD since 2006. It was noted that the symptoms were chronic and active; he was referred to a gastroenterologist. 

A September 2015 letter from a private gastroenterologist, Dr. K, reported that the Veteran was a patient being treated for chronic GERD since 2011. Dr K stated that the STRs reflected a diagnosis of an ulcer in 1996; it was treated with Zantac. It was also related that an upper endoscopy from 2012 revealed esophagitis and gastritis. Dr. K opined that the Veteran’s gastritis and esophagitis were related to service because GERD first began during service in the 1990s. 

His entrance examination did not reveal any evidence of reflux esophagitis or gastritis. His 2005 separation examination revealed complaints of frequent reflux and indigestion. Dr. K opined that because the Veteran had no history of GERD, esophagitis, or gastritis, until the condition first manifested during service, GERD, esophagitis and gastritis were more likely related to service.

An October 2014 VA examination reflected a diagnosis of GERD. The Veteran reported that his disorder started in 1995 when he had an ulcer. The examiner noted that at service separation the Veteran reported having had an ulcer and stomach and intestinal trouble. 

The examiner opined that the currently-diagnosed GERD was at least as likely as not incurred in or caused by service. The examiner reasoned that the STRs, which noted a diagnosis of ulcers and treatment with Tagamet, represented an indication that the disorder began during service and at least as likely as not progressed/returned with current symptoms. 

While the STRs show a diagnosis of gastritis and peptic ulcer disease in 1996, they do not necessarily show ongoing symptoms thereafter. However, the private medical evidence indicated that the Veteran had been treated for GERD since 2006. In addition, there is a private medical opinion and a VA medical opinion in favor of the claim and no medical opinion against the direct service connection claim. 

The medical opinions contain adequate rationales and are based upon examination of the Veteran and review of the service treatment records. Therefore, the evidence is at least in equipoise with respect to whether the GI disorder, currently diagnosed as GERD, gastritis, and esophagitis, is causally or etiologically related to service. In giving the Veteran the benefit of the doubt, the appeal is granted.

Finally, the Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record, for the Board’s consideration. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

REMAND

The Veteran claims that he is entitled to service connection for a psychiatric disorder to include PTSD and anxiety because it is due to certain in-service stressors. While a February 2015 memorandum concludes that there was insufficient information required to corroborate the claimed stressors (it was noted that he did not respond with a stressor statement), he submitted a written statement detailing his stressors in May 2016. 

Further, while the Veteran was not diagnosed with PTSD at the June 2011 VA examination, he was diagnosed with anxiety. Unfortunately, the VA examiner did not provide an opinion with regard to the etiology of the currently diagnosed anxiety. 

The failure to obtain an opinion with regard to the diagnosis of anxiety (at the June 2011 examination) and the failure to undertake stressor development following the May 2016 stressor statement are pre-decisional duty to assist errors. With regard to such errors, under Pub. L. No. 115-55, § 2(d)(2), a remanded is needed to correct the error. As such, the appeal of the claim for service connection for a psychiatric disorder to include PTSD and anxiety is remanded.

The appeal is remanded to accomplish the following:

1. Undertake all appropriate development effort to verify the Veteran’s claimed stressors, which are documented in his May 2016 written stressor statement.

2. Schedule the Veteran an examination to assess the etiology of his acquired psychiatric disorder, to specifically include the June 2011 diagnosis of anxiety not otherwise specified. All pertinent evidence of record must be made available to and reviewed by the clinician, and any indicated tests and studies should be performed.

Based on the review of the record, the clinician is asked to offer a medical opinion as to whether it is at least as likely as not (i.e., whether there is a 50 percent or better probability) that his acquired psychiatric disorder originated during active service or is otherwise etiologically related to active service, to include any confirmed stressor (based upon development in number 1 above).

The rationale for the opinion expressed must also be provided. If the clinician is unable to provide any required opinion, he or she should explain why. If the clinician cannot provide an opinion without resorting to 

 

mere speculation, he or she shall provide a complete explanation as to why this is so.

 

L. HOWELL

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Redman, Counsel